IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 18-389 |
| | : | |
| NICOLAS ISRAEL RODRIGUEZ | : | |

McHUGH, J.                                                                                              September 15, 2021

## MEMORANDUM

Defendant Nicolas Israel Rodriguez stands charged as a felon in possession of a firearm and with various drug offenses. He was arrested during the course of a traffic stop and moves to suppress the evidence gathered at the scene. Two hearings were held at which the Government presented testimony from officers involved in Defendant's arrest. Having considered that testimony and the arguments of counsel, I am persuaded that the officers had a lawful basis on which to stop the vehicle in which Mr. Rodriguez was riding, and legitimate concerns for their safety justifying their request that he step out of the vehicle. At that point, given Defendant's behavior, a pat down was warranted, which was not accomplished because he fled. The officers' conduct did not go beyond what the Fourth Amendment permits in such circumstances, and the motion to suppress will therefore be denied.

I.     Relevant facts

Three officers testified: Ricky Williams, Jonathan Sweeney, and Anthony Mergeoitti. I found their testimony to be credible and find the following facts. On Thursday, March 1, 2018, Mr. Rodriguez was a passenger in a vehicle traveling westbound on the 2800 block of Tasker Street in Philadelphia, an area described by police as "high crime" with significant gun and gang

1

violence.  At approximately 8:39 p.m., Philadelphia Police Officers Ricky Williams and Jonathan Sweeney, who were on routine patrol, observed that a vehicle had significantly tinted windows, and ran a license plate check.  Although the license plate check returned no negative information, the officers nonetheless initiated a traffic stop based on their belief that the window tinting was excessive and in violation of Pennsylvania law.

After pulling the vehicle over, the officers observed movement inside the vehicle, including some rocking of the vehicle consistent with vigorous movement, but the window tinting prevented a clear view beyond silhouettes, despite the use of lights on the patrol vehicle.  The officers testified that the combination of this movement, the area in which they were patrolling, and their inability to clearly see inside the vehicle raised concern that the occupants may have been armed.  The officers approached, one on each side of the vehicle, and more than once ordered the occupants to lower their windows.  Even after the driver and front seat passenger complied, Mr. Rodriguez, seated in the rear, only lowered his window far enough for officers to see him from the shoulders up and, according to Officer Williams, he lowered his hands to his lap two or three times despite being ordered to keep his hands visible and on the headrest in front of him.

The officers next ordered all occupants from the vehicle.  Mr. Rodriguez, despite being ordered to keep his hands on the trunk, continued to put his hands down.  Officer Sweeney observed Defendant reaching toward his right pocket and drew his service revolver.  Officer Williams attempted to grab Mr. Rodriguez's hands, when Mr. Rodriguez spun away, almost elbowing the officer, and attempted to flee.  Officer Williams eventually threw Mr. Rodriguez to the ground, and Mr. Rodriguez hit his head on a car.[1]  Mr. Rodriguez was subdued with help

---

[1] According to Officer Sweeney, it was a vehicle in motion.

from Officer Sweeney, who handcuffed him. Sometime during this sequence of events, the patrol officers called for backup. One of the responding Officers, Anthony Mergeoitti, walked Mr. Rodriguez to a patrol car and, in accordance with standard procedure before placing a suspect in a vehicle, searched him, finding a handgun in his right sweatshirt pocket, as well as suspected heroin and marijuana. During that search, Mr. Rodriguez stated "[t]hose guys have nothing to do with this. This is all me." N.T. May 19, 2021, p. 36.

The driver and other passenger were released and given a verbal warning regarding the excessive window tinting. Mr. Rodriguez was arrested and charged with possession of heroin, fentanyl, acetyl fentanyl, and cocaine, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C), possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

II.     Fourth Amendment Analysis

The defense is correct that the protections of the Fourth Amendment "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968) (finding that the Fourth Amendment guarantee of "personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study[.]"). But nothing the officers did here violated Defendant's Fourth Amendment rights.

A. Justification for the Initial Traffic Stop

For a traffic stop to be justified under the Fourth Amendment, a police officer must have "at least [an] articulable and reasonable suspicion that. . . either the vehicle or an occupant is. . . subject to seizure for violation of law[.]" *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). While "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing

considerably less than preponderance of the evidence" it is still necessary that an officer have "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Critically, the Third Circuit has recognized that the Supreme Court established a "bright-line rule that *any* technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for the investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806) (emphasis added). Therefore, in a traffic stop, the focus is not on an officer's actual motivation, rather, it is an objective standard where "an officer's Fourth Amendment burden of production is to (1) identify the ordinance or statute that he believed had been violated, and (2) provide specific, articulable facts that support an *objective* determination of whether *any officer* could have possessed reasonable suspicion of the alleged infraction." *United States v. Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006) (emphasis added). It is not necessary that the ultimate charge be related to the basis for the initial stop for it to be considered reasonable. *Id.* at 398.

Because "*any* technical violation of the traffic code legitimizes a stop," even admittedly pretextual stops following very minor violations have been accepted by courts as justified. *Mosley*, 454 F.3d at 252. *See, e.g.*, *Whren*, 517 U.S. at 808, 819 (finding a pretextual stop to be justified after a driver waited at a stop sign for "an unusually long time" then suddenly turned without signaling); *United States v. Delfin-Colina*, 464 F.3d at 400 (stating that a necklace hanging from the rearview mirror provided sufficient justification for a stop). In *United States v. Ushery*, 526 F. Supp. 2d 497, 501-02 (M.D. Pa. 2007), an officer's decision to stop a vehicle for allegedly excessive window tinting was considered lawful because the officer's suspicions were based on years of experience, despite the fact that no citation nor even a warning was ultimately

4

issued for the violation. "[A] reasonable belief that window tint violates traffic regulations will justify a stop regardless of whether a window tint violation is ultimately found to exist or whether the driver is cited for it." *Id* at 501. ²

Here, as in *Delfin-Colina*, Officer Williams identified the statute he believed was violated, and articulated the basis for a violation, excessively tinted windows. As in *Ushery*, although the driver of the vehicle was not ultimately cited for allegedly excessive window tinting, this fact does not render the stop unjustified where the officers, based on their years of experience, contend that they reasonably believed the window tinting violated the statute. Like the officers' decision to pull the vehicle over in *Hall*, although it was dark and more challenging to ascertain for certain whether the windows were sufficiently tinted to constitute a violation, the officers were permitted to proceed based on "probabilities" rather than "hard certainties" that the vehicle Mr. Rodriguez was traveling in had illegally tinted windows. Finally, as in *Delfin-Colina* and *Whren*, even if the decision to stop the vehicle was a "mere pretext" to investigate other suspected crimes, this would not render the stop invalid when it was grounded in suspected statutory violations and specifically articulated facts.

B, Legality of the attempted pat down of Mr. Rodriquez

A "warrantless search is presumptively unreasonable, and the burden is on the government to establish . . . that circumstances justified acting without a warrant." *Ushery*, 526 F.Supp.2d at 502 (citing *Vale v. Louisiana*, 399 U.S. 30, 34 (1970)). However, because "traffic stops may be dangerous encounters" for police officers, and because "the fact that there is more than one occupant of [a] vehicle increases the possible sources of harm to the officer [,]" once

---

² In a non-precedential opinion, *United States v. Hall,* 270 F. App'x 123, 126 (3d Cir. 2008) a panel of the Third Circuit held that even a stop during dark pre-dawn hours was justified, because "reasonable suspicion analysis does not 'deal with hard certainties, but with probabilities.'" (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

police have initiated a lawful traffic stop, they "may order passengers to get out of the car pending completion of the stop" without violating the Fourth Amendment. *Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997).

Once occupants are out of the vehicle an "officer [is] justified in conducting a limited search for weapons once he ha[s] reasonably concluded that the person whom he had legitimately stopped might be armed and presently dangerous." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *see also Wilson*, 519 U.S. at 410 (extending the rule of *Mimms* to vehicle passengers in addition to drivers). It is true that "there must be a narrowly drawn authority to permit [such a] search . . . for the protection of the police officer[.]" *Terry*, 392 U.S. at 26. The question is whether there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* at 21. The court must "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis'" for their suspicion. *Arvizu*, 534 U.S. at 273 (quoting *Cortez*, 449 U.S. at 417-18). At the same time, the Third Circuit has recognized that "[c]ourts give considerable deference to police officers' determinations of reasonable suspicion[.]" *Mosley*, 454 F.3d at 252.

In *United States v. Moorefield*, the "articulable facts" deemed sufficient for officers to fear for their safety included a vehicle passenger's "furtive hand movements and refusal to obey the officers' orders" while raising and lowering his hands multiple times. 111 F.3d 10, 14 (3d Cir. 1997). In *Hall*, a non-precedential panel of the Circuit held that police were warranted in ordering a driver to exit a vehicle after initiating a traffic stop for excessive window tinting, where they had observed a "bulge" in his waistband which turned out to be a gun. 270 F. App'x at 125.

Similar to the officers in *Hall* and *Moorefield*, the officers who stopped Mr. Rodriguez provided several "specific and articulable facts" which caused them to fear for their safety and to suspect Mr. Rodriguez may have been armed, including, (1) an inability to see clearly into the vehicle due to excessive window tinting; (2) significant movement inside the vehicle after it was pulled over; (3) Rodriguez leaving his window partially rolled up so that officers could not see below his shoulders; (4) Rodriguez's non-compliance with officers' commands to keep his hands visible, repeatedly dropping his hands to his lap while in the vehicle; and (5) Rodriguez continuing to drop his hands toward his pockets after being ordered from the car.

In fact, a pat-down never occurred, as the Defendant fled before it could be accomplished, but it was certainly reasonable for the officers to have ordered him out of the car where he could be clearly observed, and equally reasonable for them to proceed with a limited search. And it was indisputably reasonable to secure him with handcuffs after the struggle with Officer Williams.

In that regard, the defense seeks to attach significance to the fact that the weapon was not discovered until after Mr. Rodriquez was handcuffed and about to be placed in a patrol car. But the Third Circuit has specifically recognized the risk to police even from handcuffed suspects, observing that "handcuffs are not fail-safe," with the result that the test for reasonableness "remains a lenient standard." *United States v. Shakir*, 616 F.3d 315, 320-21 (3d Cir. 2010). In that regard, context is important, as Officer Mergeoitti testified that he was following Department protocol in conducting the search before placing a suspect in a police vehicle.

III. <u>Conclusion</u>

On the record before me, based upon the credible testimony of the arresting officers, no Fourth Amendment violation occurred. The motion will therefore be denied.

<u>/s/Gerald Austin McHugh</u>
United States District Judge